NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELVIN HOWARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 6733 |
| | ) |
| CHICAGO POLICE OFFICER R. JACKSON, | ) Judge Rebecca R. Pallmeyer |
| STAR NO. 15556; CHICAGO POLICE | ) |
| OFFICER E. RUIZ, STAR NO. 19207; | ) |
| CHICAGO POLICE OFFICER | ) |
| J. SANKOVICH, STAR NO. 3318 and | ) |
| CHICAGO POLICE OFFICER J. | ) |
| ZAMBRANO, STAR NO. 5475, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kelvin Howard alleges that Chicago Police Officers Robert Jackson, Edwardo Ruiz, James Sankovich, and Javier Zambrano placed him under arrest without probable cause in violation of the Fourth Amendment and 42 U.S.C. § 1983 (Count I), and conspired to falsely arrest him in violation of 42 U.S.C. § 1983 (Count II). Defendants Zambrano and Sankovich move for summary judgment, arguing that they had no involvement in Plaintiff's arrest. Defendants Jackson and Ruiz also move for summary judgment, arguing that they had probable cause to arrest Plaintiff and are entitled to qualified immunity. For the reasons explained herein, Defendants' motions for summary judgment are denied.

## BACKGROUND

Plaintiff Kelvin Howard alleges claims for false arrest and conspiracy pursuant to 42 U.S.C. § 1983. Defendants Javier Zambrano and James Sankovich contend they are entitled to summary judgment because they did not participate in or cause Plaintiff's arrest, and Defendants Robert Jackson and Edwardo Ruiz argue that they had probable cause for the arrest.

The following facts are not in dispute. On the evening of February 14, 2008, Kelvin Howard

and his wife, Janette Howard, left Kelvin's place of work[1] and walked to Nickel Liquors, located at 3647 West Division Street in Chicago. (Defs.' 56.1(a) ¶¶ 2, 17-18.) The area, bordered by Division, Grand, and Monticello streets, is known by police for drug trafficking and high crime rates. (*Id.* ¶¶ 3-5.) While on their way, the Howards ran into their friends Marcus Clay and Temaco Taylor, and the four proceeded to Nickel Liquors, where they purchased a bottle of champagne. (*Id.* ¶ 19; Clay Deposition, Ex. E to Def.'s Br. at 32, 33 ["Clay Deposition"].) As Howard left the store, he heard an acquaintance, Kelvin Lewis, call to him from a pay phone in the crowded, dimly-lit parking lot. (*Id.* ¶¶ 7, 8, 20; Howard Dep. at 67.) Howard approached Lewis while Janette, Clay, and Taylor remained near the store. (Def.'s 56.1(a) ¶ 21.)

Almost immediately, two unmarked police cars carrying four plain-clothed officers pulled into the parking lot and stopped their vehicles near Howard and Lewis. (*Id.* ¶ 23.) Lewis was holding a bottle of champagne in his hand. (*Id.* ¶ 25.) Two officers approached Howard, and two others approached Lewis. *(Id.* ¶ 30.) Officers Ruiz and Jackson handcuffed Howard, and then searched him.[2] (*Id.* ¶ 37.) Officer Jackson placed Plaintiff in the back of the police car. (*Id.* ¶ 33.) The officers then placed Lewis into a separate car and transported Howard and Lewis separately to the police station. (*Id.* ¶¶ 31, 38.) Howard was arrested for soliciting unlawful business and possession of a controlled substance. (*Id.* ¶ 40.) Lewis was arrested for public intoxication. (*Id.* ¶ 41.) The

---

[1] Howard worked as an upholstery subcontractor out of a storefront he rented for his business, which was named "Recovery Specialists." (Howard Deposition, Ex. B to Def.'s Br. at 20-21 ["Howard Dep."].) The storefront, at 1155 North Lawndale Ave., is one city block away from Nickel Liquors. (*Id.*)

[2] There is some confusion in the record as to whether Howard was searched prior to being placed in the police vehicle. Witnesses testified that he was searched, and Howard's complaint alleged that he was searched; at his deposition, however, Howard testified that he was not searched. (Compl. ¶¶ 7, 8; Howard Dep. at 118-19, 126-27; Taylor Deposition, Ex. E. to Def.'s Br. at 59 ["Taylor Dep."]; Clay Dep. at 32.) He nevertheless acknowledged, however, that "[o]nly one officer searched the Plaintiff, " (Pl.'s Resp. ¶ 37) but denies that any drugs were found on his person. (Pl.'s Supp. ¶ 31.) For purposes of this ruling, the court will assume that there was a search but that the parties dispute whether drugs were recovered.

police report for Howard's arrest identifies Officers Robert Jackson and Edwardo Ruiz as the arresting officers and Officers Javier Zambrano and James Sankovich as assisting in the arrest. (*Id.* ¶ 42; Pl.'s Supp. ¶¶ 18-19.) Zambrano and Sankovich are listed as arresting officers on Lewis's arrest report. (Def.'s 56.1(a) ¶ 43.)

Defendants claim that on the night in question, Officers Ruiz and Jackson were on patrol when they were flagged down by a "concerned citizen" who informed them that a black male wearing a black baseball hat, White Sox hoodie, black sweats, and black boots, was selling heroin in the Nickel Liquors parking lot. (Defs.' 56.1(a) ¶ 9; Pl.'s Ex. D at 2.) Jackson did not know the name of the person from who he received this tip, and had never before seen or received a tip from him. (Jackson Testimony, Pl.'s Ex. C at 28, 29.) The individual did not offer any additional specifics, or tell the officers that he personally observed the sales of any drugs; Jackson recalls that the citizen "just said that there is a male black, gave the description, selling drugs at that location." (*Id.* at 29.) Officers Zambrano and Sankovich were called to assist. (Defs.' Supp. Resp. ¶ 5.) The four officers went to the parking lot of Nickel Liquors, where they saw Howard, who, they claim, matched the description given by the concerned citizen. (Defs.' 56.1(a) ¶ 10.) The officers heard Howard shout "blows blows"—street language for the sale of heroin—to passing vehicles and pedestrians. (*Id.* ¶¶ 10, 11.) Jackson testified that he heard Howard yell "blow" when he was "approximately thirty feet and closing toward him."[3] (Jackson Testimony at 32.) Officers Ruiz and

---

[3] In a statement he made to the Internal Affairs Division ("IAD") on June 2, 2009, Zambrano asserted that he personally observed Howard yelling "blows" to passing vehicles and pedestrians, and then assisted Jackson and Ruiz in the arrest. (Pl.'s Ex. B.) Zambrano's statement makes no mention of any anonymous tip, nor does he explain whether he and the other officers heard Howard at the same time, or whether he reported having heard Howard yelling "blows" to Jackson or Ruiz before they arrested Howard. The court notes that the IAD statement warns that it "should not be considered a verbatim statement but only a summary of requested information." (*Id.*) Sankovich also offered an IAD statement on June 1, 2009, but it only refers to Jackson and Ruiz "receiv[ing] information of narcotics sales" and notes that Jackson and Ruiz observed Howard yelling "blows." (Pl.'s Ex. A.) Sankovich did not at that time report that either he or Zambrano personally heard Howard soliciting drug sales. (*Id.*)

Jackson apprehended Howard and took him into custody. (Defs.' 56.1(a) ¶ 12.) Specifically, Jackson testified that within one to two minutes of arriving in the parking lot, the Officers had handcuffed Howard, searched him, and placed him into the police car, in that order. (Jackson Dep. at 36.) The search revealed a Ziploc bag containing eleven smaller Ziploc baggies, each containing a white powder substance. (Defs.' 56.1(a) ¶ 13.) The officers transported Howard to the police station. (*Id.* ¶ 14.) Defendants claim that Kelvin Lewis was leaving the parking lot with a bottle of champagne when they arrived at the parking lot. (*Id.* ¶ 25.) Officers Zambrano and Sankovich arrested Lewis while Jackson and Ruiz arrested Howard, and the officers placed the two arrestees in separate cars. (*Id.* ¶¶ 30, 31.)

Plaintiff tells a markedly different version of that evening's events: He alleges that the four officers were traveling in a "wolf pack"[4] when they allegedly spoke to the "concerned citizen." (Pl.'s Supp. ¶¶ 5-6.) Howard acknowledges that he was in the Nickel Liquor parking lot, but says he was wearing black khakis and a leather jacket, and was not wearing a baseball cap. (*Id.* ¶¶ 8-10.) Howard claims he did not shout "blows blows," and, in fact, had no knowledge of the slang term "blows" prior to his arrest that evening. (*Id.* ¶ 12; Howard Dep. at 106.) Howard was standing near Lewis in the parking lot but had not spoken to him before two police cars suddenly arrived, parked directly in front of Howard and Lewis, and immediately took Howard into custody. (Pl.'s Supp. ¶ 7; Howard Dep. at 99.) Howard testified that the officers did not inform him of any charges against him or advise him of his *Miranda* rights (Howard Dep. at 104), and did not recover anything resembling illegal narcotics from his body.[5] (Pl.'s Supp. ¶ 11.) Three of the four officers then

---

[4] "Wolf Pack" is a slang term used by police officers to explain group travel for safety purposes. (Zambrano Deposition, Ex. D to Def.'s Br. at 37-38.)

[5] Several witness accounts cited by Howard support his assertion that nothing at all was taken from Howard by police as a result of their custodial search, while other witnesses testified that keys and money were taken from him. All of the witness accounts proffered by Howard include unequivocal testimony that police recovered nothing resembling narcotics from (continued...)

4

proceeded to search the parking lot and surrounding area while the fourth officer remained near the vehicles. (*Id.* ¶¶ 13-14.) Plaintiff claims that during this search, which lasted approximately half an hour, the officers questioned Lewis about Howard, but did not recover any drugs. (*Id.* ¶¶ 15-17.) After the search, Howard claims, the officers "huddled up and engaged in a discussion," before transporting him and Lewis to the police station. *(Id.)* At the police station, an officer matching Jackson's description questioned Lewis further about his relationship to Howard and his involvement in drug activity. (*Id.* ¶¶ 29, 30; Lewis Deposition, Ex. C to Def.'s Br. at 36.) Lewis, who was arrested that evening for public intoxication, had not had a single alcoholic drink all day. (*Id.* at 30.) The criminal charges against Howard were dismissed on February 2, 2009.[6] (Compl. ¶ 13.)

## DISCUSSION

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To avoid summary judgment, the plaintiff must be able to set forth more than a mere scintilla of evidence demonstrating a genuine issue of triable fact. *Pugh v. City of Attica,* 259 F.3d 619, 625 (7th Cir. 2001). A genuine issue of fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *AA Sales & Associates, Inc. v. Coni-Seal Inc.*, 550 F.3d 605, 608-09 (7th Cir. 2008).

### 1. Probable Cause

In order to prevail on his § 1983 claim, Howard must prove that the officers arrested him without probable cause to do so. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). A

---

[5](...continued)
Howard. (Howard Dep. at 104; Taylor Dep. at 59; Clay Dep. at 32.)

[6] Neither Plaintiff nor Defendants discuss the specifics regarding the dismissal of the criminal charges against Plaintiff in their fact statements, and no additional details are offered in the Complaint.

showing of probable cause is an "absolute defense" to a § 1983 claim of false arrest. *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007). Police officers have probable cause to arrest when the facts and circumstances, as known to them at the time of the arrest, would lead an ordinary, prudent person to believe that the suspect had committed an offense. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). When police officers receive information "sufficient to raise a substantial chance of criminal activity from a person whose truthfulness [the officers have] . . . no reason to doubt," the officers have probable cause to act on that information. *Smith v. Lamz,* 321 F.3d 680, 685 (7th Cir. 2003). While there are many formulations describing when probable cause exists, "all [of them] refer to the exercise of judgment, which turns on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) (citation and quotation omitted). Accordingly, "[t]he question of probable cause is typically a proper issue for a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013-14 (7th Cir. 2006) (citation and quotation omitted).

The Defendant Officers claim they are entitled to summary judgment because there was probable cause to arrest Howard: The officers had received information from a concerned citizen that a black male, wearing mostly black attire, was selling drugs at a specific parking lot in an area known for high drug trafficking. Upon arriving at the parking lot, the officers observed Howard, who matched the tipster's description, standing near a corner of the parking lot with another individual, and shouting "blows" to vehicles and pedestrians. These facts, the officers submit, support a probable cause determination. Again, however, Howard's version of events is in tension with this account: Howard denies that he was shouting "blows" to passing vehicles and pedestrians, and contends his clothing did not match the description provided by the tipster.

Defendants cite *Edwards v. Cabrera*, 58 F.3d 290 (7th Cir.1995), for the proposition that an

"anonymous" tip can be sufficient to establish probable cause. In *Edwards*, police received a 911 call from a public bus dispatcher who relayed information from a bus driver. *Id.* at 292. Though the dispatcher did not leave the bus driver's name, the court concluded he was not in fact "anonymous" due to the ease with which police would be able to locate him. *Id.* at 294. In addition, the court noted other circumstances that supported a probable cause finding, including the discovery of illegal drugs upon a consensual search of the arrestee's bag. *Id.* In the case before this court, by contrast, the officers approached Plaintiff and took him into custody on the basis of the tip, without any additional corroborating information, and did not even search him until he had been handcuffed. According to Plaintiff, that search uncovered no contraband.

Even relying on Defendants' version, this case more closely resembles *Florida v. J.L.*, 529 U.S. 266 (2000), where police received an anonymous tip that a black male wearing a plaid shirt was carrying a gun at a specific bus stop. *Id.* at 268. When the police arrived at the bus stop, they observed a black male wearing a plaid shirt, performed a "stop and frisk" procedure, and found a weapon. In ruling that the anonymous tip was not sufficient to justify this search, the Supreme Court said:

> The anonymous call concerning [defendant] provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. . . .The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [defendant].

*Id.* at 271. The "concerned citizen" tip that led to Howard's arrest similarly provided no predictive information enabling the police officers to verify the accuracy of the tip. If an anonymous tip was insufficient to support a "stop and frisk," it certainly is insufficient to support a full custodial arrest.[7]

---

[7] Defendants' citation to *Tangwall v. Stuckey*, 135 F.3d 510 (7th Cir. 1998) is unhelpful. *Tangwell* did not involve an anonymous tip; it involved a rape victim identifying her attacker from across a room because she was too fearful to more closely approach him. *Id.* at 513.
(continued...)

Plaintiff has established a dispute of fact on this issue, and summary judgment on the issue of probable cause is denied.

### 2. Defendants Zambrano and Sankovich

Whether or not probable cause existed for Howard's arrest, Defendant Officers Zambrano and Sankovich argue that they are entitled to summary judgment because they did not participate in that arrest at all. Instead, they simply arrested Lewis—a person unrelated to Howard except for their physical proximity at the time of arrest—for public intoxication. Defendants are correct that an individual cannot be held liable in a §1983 action unless he personally caused or participated in the alleged constitutional deprivation. *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998). In *Jenkins,* the defendant officer did not participate in plaintiff's actual arrest; at the police station, however, he did sign a criminal complaint against plaintiff. In affirming summary judgment in favor of the defendant officer, the Seventh Circuit concluded that the officer could not be held liable for engaging in the "ministerial act" of signing a criminal complaint. 147 F.3d at 583. Officers Zambrano and Sankovich claim that their involvement in Howard's arrest was similarly tangential, in that any assistance they rendered in connection with Howard's arrest took place only after the other two officers had already placed Howard in their police car. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (concluding that a person is under arrest if a reasonable person in the situation would believe he is not free to leave).

Howard quarrels with Defendants' version of events, however. He contends that the four officers were traveling in a "wolf pack" on the evening in question, and that they arrested him and Lewis in concert. The officers proceeded to the Nickel Liquors parking lot together after receiving the anonymous tip. Lewis and Howard were standing merely feet apart when the officers arrived.

---

[7](...continued)
A victim's identification of a perpetrator can support probable cause where the police have no reason to doubt the victim's sincerity. No victim or identification is at issue in this case.

Zambrano claims that he heard Howard shouting "blows" prior to the arrest; whether or how he communicated this to the other officers is unexplained. Zambrano and Sankovich assisted in the search of the parking lot and surrounding area for thirty minutes, ostensibly searching for evidence to support Howard's arrest, and were listed on the arrest report as assisting with the arrest. Moreover, Zambrano and Sankovich, who were the arresting officers for Lewis, questioned Lewis about his relationship with Howard, and one of Howard's arresting officers questioned Lewis further while he was in custody at the police station. The court concludes that there is a genuine issue of material fact as to whether Zambrano and Sankovich's role in Howard's arrest was more than "ministerial." Summary judgment on this basis is denied.

For similar reasons, the court concludes that Plaintiff's conspiracy allegations against Defendants Zambrano and Sankovich survive summary judgment. A conspiracy claim requires a showing (1) of an agreement by the defendants, either express or implied, to deprive the plaintiff of his rights under the Constitution; and (2) that the plaintiff's rights were actually deprived as a result of the defendant's overt acts in furtherance of their agreement. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir.1988). As described above, the four officers arrived on the scene together, collectively searched the parking lot in an attempt to find illegal drugs, and then huddled and engaged in conversation, presumably to discuss how to proceed. Zambrano and Sankovich questioned Lewis regarding Howard both at the scene of the arrest and at the police station. Zambrano and Sankovich were listed as assisting in Howard's arrest, and both have offered IAD statements demonstrating familiarity with the specific events surrounding Howard's arrest. These facts, considered in the light most favorable to Plaintiff, demonstrate a genuine issue of material fact as to whether all four officers engaged in a conspiracy to deprive Plaintiff of his constitutional rights. Defendants' motion for summary judgment on this claim, too, is denied.

**3.    Qualified Immunity.**

Qualified immunity protects police officers from liability for reasonable errors in a probable cause determination. *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). The plaintiff has the burden of defeating a qualified immunity defense. *Mannoia v. Farrow*, 476 F.3d 453 (7th Cir. 2007). To defeat a claim of qualified immunity, the plaintiff must show that (1) the defendants violated a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct. *Lewis v. Downy*, 581 F.3d 467, 478 (7th Cir. 2009). Defendants concede that the right to be free from unlawful arrest was a clearly established right when this incident occurred. *See Driebel v. City of Milwaukee*, 298 F.3d 622, 652 (7th Cir. 2002). Defendants may nevertheless be entitled to immunity if a reasonable officer could have believed that there was probable cause for Plaintiff's arrest. *See Wheeler*, 539 F.3d at 639; *see also Sornberger*, 434 F.3d at 1014.

The court concludes that disputes of fact preclude summary judgment on this defense, as well. At the time of the arrest, the only information the officers had connecting Howard to the crime of unlawful solicitation or narcotics possession was an uncorroborated, anonymous tip. The tipster did not describe Howard's alleged illegal activities with any specificity, and, according to Howard, the description he offered did not match Howard's appearance. Howard denies offering to sell drugs to anyone and disputes that the police discovered any drugs during a custodial search of his person. If Howard's version of facts is believed, no reasonable officer would have believed there was probable cause to arrest him. Summary judgment ion the basis of qualified immunity is denied.

## **CONCLUSION**

For the aforementioned reasons, Defendants' motion for summary judgment [34] is denied.

ENTER:

Dated: September 13, 2011

_____
REBECCA R. PALLMEYER
United States District Judge